UNITED STATES OF AMERICA

ss: New Haven, Connecticut

COUNTY OF NEW HAVEN

FILED
2018 FEB 27 P 3:44
U.S. DISTRICT COURT
NEW HAVEN, CT

3:18MJ272-JGM

## AFFIDAVIT

I, Jay M. Salvatore, a Special Agent with the Drug Enforcement Administration, being duly sworn, deposes and states:

1. I am employed as a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since December 2004.

2. I am currently assigned to the DEA Hartford Resident Office ("HRO"). I have attended and successfully completed the Drug Enforcement Administration's Basic Agent Training School. In addition, I have attended other specialized drug training schools conducted by the DEA; have testified on several occasions in grand jury proceedings, where my testimony has contributed to the indictment of numerous individuals; have been involved with the execution of state and federal search and seizure warrants where controlled substances have been seized; have participated in several investigations in which federally authorized wire interception orders were issued; and I have participated in numerous arrests of individuals charged with federal and/or state narcotics violations. I am currently assigned to conduct drug and money laundering investigations at the DEA's HRO.

3. In my current position with the DEA HRO, my duties include investigating violations of the Connecticut General Statutes and the Controlled Substances Act, including, but not limited to, investigating those drug traffickers and organizations responsible for diverting and distributing pharmaceuticals and other drugs within the State of Connecticut. Due to the abuse and trafficking of opioid-based pharmaceutical pills and the correlated abuse and trafficking of



1

heroin and fentanyl, the DEA HRO is also actively conducting investigations into individuals and organizations involved with the distribution of heroin and fentanyl.

4. Prior to being employed by the DEA, I was a sworn Police Officer in the Town of Wethersfield, CT for approximately three and a half years. As a certified Police Officer in the State of Connecticut, this Affiant conducted numerous investigations of violations of the law, including narcotics violations.

5. This Affiant has directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, and undercover activities as well as debriefed and managed confidential sources. This Affiant is familiar with the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

6. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. This affidavit relates to an investigation, in which I have been involved, of two heroin overdose deaths that occurred in Enfield, Connecticut on or about Friday, August 26, 2016 and on or about Thursday, October 27, 2016. In particular, I have been investigating Christopher BARRETO (with a date of birth (xx/xx/1989 that is known to me) for violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (possession with intent to distribute and the distribution of, heroin and fentanyl).

7. I make this affidavit in support of an application for a search and seizure warrant for the cellular telephone contents and records of a cellular telephone identified as follows:

    a. One (1) white Samsung cellular telephone with Model Number SM-G550T1 and FCC ID A3LSMG550T, currently in DEA custody, and seized

*JMS*

from BARRETO incident to his arrest on August 10, 2017. Based on the information gained throughout the course of this investigation, as well as my training and experience, it is my belief that this telephone was utilized by CHRISTOPHER BARRETO in furtherance of his possession with intent to distribute and distribution of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). This cellular telephone will be referred to herein as the "**Subject Telephone**."

8. This affidavit does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. Rather, this affidavit is intended to show merely that there is sufficient probable cause for the search warrant, and does not set forth all of my knowledge about this matter. The statements contained in this affidavit are based, in part, on information provided by Special Agents and Task Force Officers of the DEA, as well as other officers from state and local agencies, including but not limited to the Enfield Police Department ("EPD"), on law enforcement officers' review of seized electronic evidence (including stored text messages), and on the experience and training of the Affiant.

## BACKGROUND

9. The underlying investigation into BARRETO began with the untimely drug-overdose death of a 35-year old man, hereafter referred to as VICTIM #1, and the untimely drug-overdose death of a 36-year old man, hereafter referred to as VICTIM #2. VICTIM #1, who was residing with his mother at the time of his death at a private residence in Enfield, Connecticut, was found deceased in his bedroom by his mother's live-in boyfriend, Witness #1, during the morning hours of August 26, 2016. While responding EPD units were conducting their initial investigation into the events surrounding VICTIM #1's death, investigators took possession of various items,

3

which included VICTIM #1's cellular telephone, multiple wax envelopes stamped "Diesel," approximately six of which were not used and contained suspected heroin.

10. VICTIM #2, who was residing at a private residence in Enfield, Connecticut, was found outside the residence unresponsive. VICTIM #2 was transported to Johnson Memorial Hospital where VICTIM #2 died. The scene was initially treated as a medical emergency by the EPD resulting in no evidence seized at the time; however, VICTIM #2's mother later provided related evidence to the EPD.

## PROBABLE CAUSE

11. After the death of the two victims, the EPD and the DEA conducted an extensive investigation into their deaths.[1] As a result of this investigation, law enforcement officers determined that VICTIM #1 and VICTIM #2 were provided with heroin and/or fentanyl by an individual identified as CW-1 who was utilizing a cellular telephone with the number (860) 707-3652 to facilitate that distribution

12. On April 27, 2017, members of the DEA Hartford Resident Office (HRO) arrested CW-1 pursuant to a federal arrest warrant charging him with violating Title 21 USC 841 (a) (1) and 841 (b)(1)(C) (possession with the intent to distribute, and distribution of, a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance). During CW-1's arrest, this Affiant seized CW-1's cell phone pursuant to the federal search and seizure warrant.

13. After he was arrested and with the benefit of representation, CW-1 came into the USAO-CT for three proffer sessions in May and June of 2017. In his proffer sessions, CW-1 described how the source from whom CW-1 had been buying narcotics for the longest period of

---

[1] This investigation was detailed in the affidavit in support of the complaint and arrest warrant for BARRETO signed by United States Magistrate Judge Sarah A. L. Merriam on August 7, 2017.

4

time was someone he identified as "CHRIS." CW-1 described CHRIS as a smaller Hispanic male with tattoos and said that CHRIS drove a black Acura MDX SUV with Connecticut license plates. CW-1 said that he had gone up to the front door of CHRIS's house to buy heroin/fentanyl, but had not actually been inside his house.

14. Utilizing Google Maps, CW-1 identified the residence as 63 Standish Street, Hartford, CT. CW-1 also said that CHRIS had previously lived on Collins Street, Hartford, CT. CHRIS was listed in CW-1's phone contacts as "BEAT CHRIS" and CW-1 stated that he would contact CHRIS by telephone to set up narcotics transactions. CW-1 also picked CHRIS out of a photo line-up and law enforcement agents identified him as Christopher BARRETO (with a DOB of xx/xx/1989 that is known to me). On the back of BARRETO's photo, CW-1 positively identified the photograph with his signature and wrote "I know this person as Chris from Hartford. He is the person I bought Heroin from, on Standish Street and Collins Street."

15. CW-1 admitted to purchasing illegal drugs from CHRIS off and on again, and sometimes every day for approximately four to five years. CW-1 said that the amount he purchased from CHRIS ranged from one bundle (10 bags) to one or two stacks (one stack equals 100 bags). CHRIS charged CW-1 $25 - $30 a bundle. CW-1 also said that CHRIS had multiple stamps identifying his product. CW-1 stated that the stamps "diesel" "ko" and "call of duty" were the bags that contained fentanyl. CW-1 stated that he had once overdosed from one of the "ko" bags he had purchased from CHRIS.

16. As a result of the data retrieved from CW-1's phone pursuant to the federal search warrant, law enforcement officers were able to identify multiple phone numbers for "BEAT CHRIS": (1) 860-318-6962 and (2) 860-248-1839. The second number was the most recent number used by "BEAT CHRIS" in CW-1's phone. Utilizing 860-248-1839, the Hartford Police

Department conducted an in-house search, which revealed one result. On March 4, 2017, officers from the Hartford Police Department responded to 640 Broad Street, 2nd Floor in Hartford on a domestic breach of peace incident. One of the individuals involved in this incident was identified as Christopher BARRETO of 66 Standish Street, Hartford, CT, who had also provided police officers with phone number 860-248-1839.

17. After further examination of the data retrieved from CW-1's phone, law enforcement officers located approximately 1,100 text messages between CW-1 and BARRETO beginning in April of 2016 and continuing until April 2017. Nearly all of the text conversations between CW-1 and BARRETO had to do with the purchase of illegal drugs. Through an analysis of the messages, TFO Devanney was able to determine that CW-1 had purchased approximately 375 bundles of heroin/fentanyl from BARRETO throughout the year. This was determined using the amounts listed within the messages and if there were no amounts mentioned, then it was assumed that CW-1 had purchased a minimum of one (1) bundle. The text messages also indicate that BARRETO knew he was selling fentanyl because there were numerous references to "Fire" throughout the text messages he sent to CW-1 and the reference to "Fire" is commonly used by drug dealers to refer to fentanyl.

18. During the previously mentioned proffer interviews, CW-1 explained that he believed that he had purchased the fentanyl from BARRETO that ultimately resulted in the fatal overdoses of both victims. This was supported by the text messages between CW-1 and BARRETO. On August 7, 2017, Judge Merriam signed an arrest warrant for BARRETO's arrest based on the federal complaint and a search warrant for the telephone associated with the 860-248-1839 number, referred to herein as the "LG Phone."

19. When BARRETO was arrested on the charges in this case on August 10, 2017,

surveillance was first established outside of his house in the morning. BARRETO exited shortly after and entered a 2008 Black Acura MDX, which is the car that CW-1 had described BARRETO using to service narcotics customers.

20. BARRETO was followed by law enforcement to a Wendy's restaurant near his house and arrested by law enforcement officers in the parking lot of the restaurant. During a search incident to arrest, the affiant located and seized a black LG flip cell phone from BARRETO's right front jean pocket, which was subsequently seized by officers—the LG Phone. SA Salvatore, while utilizing his Government phone, dialed 860-248-1839, which resulted with the LG phone beginning to ring. Upon this confirmation, the LG phone was seized pursuant to the federal search warrant.

21. During the search of the black Acura incident to arrest, the Affiant located and seized a white Samsung phone, which was on top of the center console—the **Subject Telephone**. This phone was taken into DEA custody.

22. Law enforcement officers returned to the house with the food that BARRETO had purchased for his girlfriend and obtained consent from BARRETO's girlfriend to search the house. Law enforcement officers then recovered some 2,000 individually wrapped bags of heroin in the kitchen of the house. BARRETO's cell phone was also seized and has since been reviewed.

23. Although agents were only able to obtain a partial extraction of BARRETO's LG Phone, there were a number of text messages with narcotics customers. Those text messages begin in May of 2017 and continue until BARRETO was arrested in August of 2017. The text messages are explicit in their references to drugs and include messages like "I just did 12 of those KTMs all at once . . . almost nothing barely feel high. Good news though . . I hit a vein n it gave me almost no swelling" from a customer on June 16, 2017 and "bratha man its rob what do you have im real

*JMS*

sick and I need something strong" from a customer on August 9, 2017;" and there are also multiple messages in which BARRETO coordinates arranging to meet up with customers.

24. An indictment for BARRETO was returned by a federal grand jury on December 7, 2017 charging BARRETO with one count of possession with intent to distribute and distribution of heroin and fentanyl. *See* Docket Entry No. 31.

25. In reviewing the evidence in preparation for a potential trial in this matter, law enforcement officers determined that, based on BARRETO's prior history and the fact that he uses multiple phones at one time, there is also likely to be evidence of BARRETO's narcotics trafficking activities contained on the Subject Telephone. CW-1 has stated that BARRETO used more than one telephone at a time when he was buying drugs from him and this Affiant knows, from his training and experience, that drug dealers regularly use more than one telephone at a time to communicate with narcotics customers.

26. Accordingly, as detailed below, the Affiant has reason to believe and does believe that there is likely to be other evidence of BARRETO's narcotics trafficking activities contained on the Subject Telephone and thus is requesting permission to search that telephone.

## INFORMATION REGARDING CELLULAR TELEPHONES AND THE REQUESTED SEARCH WARRANTS

27. Based on my training, experience, I know that the aforementioned Subject Telephone may have some or all of the capabilities that allow it to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system ("GPS") navigation device, a hand-held radio, and a personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular device, as well as evidence relating to co-conspirators with whom the device was in contact.

28. I request permission to seize and search the Subject Telephone for evidence relating the unlawful distribution, and the possession with intent to distribute, narcotics, including any evidence of communications between BARRETO and other potential co-conspirators involved in the distribution of narcotics as well as other criminal acts. Based on my training and experience, and as set forth in this affidavit, I know wireless telephones are used to communicate efforts to conduct criminal activities and it is likely that the Subject Telephone was used by BARRETO to communicate with potential co-conspirators in the unlawful distribution of narcotics. Based on my training and experience and information obtained throughout the course of this investigation I know that narcotics dealers often maintain several phones to communicate with customers and thus this telephone is also likely to contain evidence of BARRETO's narcotics trafficking activities.

29. Furthermore, based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of text communications between co-conspirators who distribute narcotics, or conspire to do so. Also based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of internet searches for locations and addresses used for storing and distributing narcotics. Also based on my training and experience, wireless phones may contain videos and images of co-conspirators, possible locations to ship, receive, or store narcotics, the quantity of narcotics and/or shipping packages within which the narcotics are concealed, and firearms, as firearms are generally considered tools of the trade in narcotics activity. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones, including phones used by those involved in the distribution of narcotics:



      a. the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;
      b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;
      c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;
      d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;
      e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;
      f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;
      g. saved searches, locations, and route history in the memory of said devices;
      h. internet browsing history, to include, internet searches in the memory of said device; and
      i. Images and videos in the memory of said device.

30. It is also requested that the Court authorize the retrieval of the above described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.



31. It is also requested that the warrant be deemed executed once the Subject Telephone has been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. The warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33. As described above and in Attachment A, this application seeks permission to search and seize things that the subject telephone might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. Searching for the evidence described in Attachment A may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine

whether it falls within the scope of the warrant. In light of these difficulties, the DEA, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## CONCLUSION

35. I submit that this affidavit supports probable cause for a search warrant to search the Subject Telephone for the items described in Attachment A as evidence, fruits, and instrumentalities of the crimes of the unlawful distribution of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

*Jay Salvatore*
Jay M. Salvatore
DEA Special Agent

Subscribed and sworn to before me this 23rd day of February, 2018

/s/ Joan G. Margolis
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

All records contained in the Subject Telephone to include the following:

1. the telephone number, ESN number, serial number, and SIM card number of the Subject Telephone;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the subject telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes (violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C));

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the subject telephone;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the subject telephone, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said subject telephone;

8. internet browsing history, to include, internet searches in the memory of the subject telephone;

9. images and videos in the memory of the subject telephone; and,

10. evidence of user attribution showing who used or owned the subject telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described subject telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.

## ATTACHMENT A

All records contained in the Subject Telephone to include the following:

1. the telephone number, ESN number, serial number, and SIM card number of the Subject Telephone;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the subject telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes (violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C));

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the subject telephone;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the subject telephone, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said subject telephone;

8. internet browsing history, to include, internet searches in the memory of the subject telephone;

9. images and videos in the memory of the subject telephone; and,

10. evidence of user attribution showing who used or owned the subject telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described subject telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.